IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

EDWARD MARIN-DeJESUS, # 33653-069, )
)
          Plaintiff, )
)
vs. )   Case No. 18-cv-579-JPG
)
DAVID SZOKE, )
P.A. CASTILLO, )
and LESLEE DUNCAN, )
)
          Defendants. )

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff is a federal prisoner, currently incarcerated at Butner Federal Medical Center in North Carolina ("Butner"). He brings this *pro se* action for alleged violations of his constitutional rights by persons acting under the color of federal authority. *See Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). His claims arose while he was detained at the USP-Marion ("Marion"). Plaintiff claims that Defendants, all medical providers at Marion, were deliberately indifferent to a serious medical condition. This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A.

Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact."

*Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Applying these standards, the Court finds that Plaintiff's deliberate indifference claim survives threshold review under § 1915A.

**The Complaint**

Plaintiff suffers from "stage 4" kidney failure, and is now dependent on dialysis for his survival. (Doc. 1, pp. 1, 4). He has been a federal prisoner since 2009, and was initially housed at MDC-Puerto Rico. *Id.* In June of 2010 he was transferred to Marion, and he remained there until May 2014, when he was moved to another institution. (Doc. 1, pp. 3, 5).

During the time Plaintiff spent at Marion, he underwent blood testing and urinalysis in June 2010, June 2012, and August 2013. Plaintiff asserts that his test results showed high levels of creatinine and cholesterol, and indicated that he was developing kidney problems, yet he was led to believe that all his lab results were normal. Specifically, Physician Assistant Castillo ordered tests in June 2012, which showed creatinine of 1.9 and cholesterol of 237. (Doc. 1, p. 3). Plaintiff alleges that from these results, Castillo "knew" that Plaintiff was at risk of harm from his kidney condition, yet failed to order monthly tests to monitor his condition, and failed to refer him to a specialist.

Dr. Szoke (clinical director) reviewed Plaintiff's June 2012 test results, which showed high levels of blood and protein in Plaintiff's urine, indicating kidney failure. However, Szoke did not order a nephrologist consultation or any further testing or treatment. (Doc. 1, pp. 3-4).

In August 2013, blood tests ordered by Physician Assistant Duncan showed a higher creatinine level of 2.1, which indicated kidney failure, according to Plaintiff. Duncan did nothing to address the risk to Plaintiff's health, failing to refer Plaintiff to Dr. Szoke or to a specialist, and did not schedule additional testing. (Doc. 1, p. 4).

Plaintiff asserts that Szoke was aware from his medical records that Plaintiff was experiencing kidney failure in 2012 and 2013, yet disregarded the risk to his health and never informed Plaintiff of the problem. Szoke's failure to treat Plaintiff's condition or refer him to a specialist during the 3 years Plaintiff was at Marion, led to Plaintiff developing irreversible stage 4 kidney failure. (Doc. 1, pp. 4-5). In May 2014, Szoke "allowed Plaintiff to be transferred . . . while he knew Plaintiff's kidneys were rapidly deteriorating[.]" (Doc. 1, p. 5).

After Plaintiff's transfer to FCI-Jesup, his medical providers there diagnosed him with kidney disease and sent him to a nephrologist who concluded that his disease was chronic and

serious, eventually worsening to stage 5. (Doc. 1, pp. 5, 18-19). The Jesup providers informed Plaintiff that the Defendants at Marion knew from his 2012 and 2013 lab reports that he was experiencing kidney failure. (Doc. 1, p. 5).

Plaintiff also includes records from his current institution from 2016, indicating that he continued to suffer from kidney disease. (Doc. 1, pp. 20-23).

As relief, Plaintiff seeks monetary damages, and an injunction to allow him to undergo a kidney transplant, transfer him to FMC-Devins to receive the transplant, and a compassionate release. (Doc. 1, p.6).

Plaintiff also notes that he has limited ability to speak and understand English, and had help preparing his Complaint. *Id.*

## Merits Review Pursuant to 28 U.S.C. § 1915A

Based on the allegations of the Complaint, the Court finds it convenient to characterize the *pro se* action into a single count. The parties and the Court will use this designation in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of this count does not constitute an opinion as to its merit. Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice.

> **Count 1:** Szoke, Castillo, and Duncan were deliberately indifferent to Plaintiff's kidney condition, in violation of the Eighth Amendment, when they failed to order further testing, treatment, or a specialist referral despite test results showing that Plaintiff's kidneys were failing.

Count 1 shall proceed for further consideration.

## Count 1 – Deliberate Indifference to Serious Medical Needs

In order to state a claim for deliberate indifference to a serious medical need, an inmate must show that he (1) suffered from an objectively serious medical condition; and (2) that the

4

defendant was deliberately indifferent to a risk of serious harm from that condition. The Seventh Circuit considers the following to be indications of a serious medical need: (1) where failure to treat the condition could "result in further significant injury or the unnecessary and wanton infliction of pain"; (2) "[e]xistence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment"; (3) "presence of a medical condition that significantly affects an individual's daily activities"; or (4) "the existence of chronic and substantial pain." *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997).

"Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk. Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted). *See also Farmer v. Brennan*, 511 U.S. 825, 842 (1994); *Perez v. Fenoglio*, 792 F.3d 768, 777-78 (7th Cir. 2015). The Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Further, a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008). Under some circumstances, an Eighth Amendment claim may be stated where a prison doctor persists in a course of treatment known to be ineffective, fails to order further testing, or refuses to refer the inmate to a specialist. *Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005) (doctor continued ineffective treatment, and refused to order endoscopy or specialist referral over a two-year period during which plaintiff suffered from ulcer).

Plaintiff's current affliction with severe kidney disease certainly satisfies the objective component of an Eighth Amendment claim. Further, Plaintiff plausibly asserts that the test results obtained by Defendants during 2012-2013 demonstrated that his kidney condition was objectively serious during the period that he was under their care. The remaining question is whether the Defendants acted or failed to act with deliberate indifference to a known risk of serious harm.

The key issue is whether each Defendant truly knew, based on Plaintiff's test results, that he faced a serious risk of harm from developing kidney disease if no steps were taken to provide him with additional testing or treatment, including a possible referral to a kidney specialist. Ordinarily, a plaintiff would demonstrate a defendant's knowing disregard of a risk to his health by showing that he reported his symptoms to the defendant or requested treatment for a condition, but the defendant failed to act in spite of this information. In Plaintiff's case, however, he was unaware of the test results that allegedly showed he was at risk for kidney disease at the time he was under the care of Szoke, Castillo, and Duncan. Since Plaintiff was led to believe that his test results were normal, he did not ask Szoke, Castillo, or Duncan to monitor his condition or refer him to a specialist. He does not mention having any symptoms of illness during 2012-2014 which might have prompted him to seek treatment.

Based on the allegations in the Complaint, it is possible that further factual development may support Plaintiff's claim of deliberate indifference. At this early stage, it is impossible to discern whether the Defendants' conduct was in line with reasonable medical treatment, amounted to mere negligence or malpractice, or violated the Eighth Amendment. Accordingly, **Count 1** against Szoke, Castillo, and Duncan shall proceed for further consideration.

Plaintiff shall note, however, that because he is no longer housed at Marion and is not

under the care of the Defendants, the injunctive relief he seeks (specific medical treatment and a transfer) is beyond the scope of available remedies in this action. "[W]hen a prisoner who seeks injunctive relief for a condition specific to a particular prison is transferred out of that prison, the need for relief, and hence the prisoner's claim, become moot." *Lehn v. Holmes*, 364 F.3d 862, 871 (7th Cir. 2004). *See also Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1995). Only if Plaintiff can show a realistic possibility that he would again be incarcerated at Marion under the conditions described in the Complaint, would it be proper for the Court to consider injunctive relief. *See Maddox v. Love*, 655 F.3d 709, 716 (7th Cir. 2011) (citing *Ortiz v. Downey,* 561 F.3d 664, 668 (7th Cir. 2009)).

Furthermore, this Court cannot order Plaintiff to be released from prison in the context of a civil rights case. A prisoner who seeks release from custody may do so by filing a petition for a writ of habeas corpus in the district where he is confined. *See Preiser v. Rodriguez*, 411 U.S. 475, 484-85 (1973); *Bunn v. Conley*, 309 F.3d 1002, 1006-07 (7th Cir. 2002); *Graham v. Broglin*, 922 F.2d 379, 381 (7th Cir. 1991).

## Pending Motion

Plaintiff's motion for leave to proceed *in forma pauperis* ("IFP") (Doc. 2) shall be granted in a separate order.

## Disposition

The Clerk of Court is **DIRECTED** to complete, on Plaintiff's behalf, a summons and form USM-285 for service of process on **SZOKE, CASTILLO, and DUNCAN**; the Clerk shall issue the completed summons. The United States Marshal **SHALL** serve Defendants **SZOKE, CASTILLO, and DUNCAN** pursuant to Rule 4(e) of the Federal Rules of Civil Procedure.[1] All

---

[1] Rule 4(e) provides, "an individual – other than a minor, an incompetent person, or a person whose waiver has been filed – may be served in a judicial district of the United States by: (1) following state law

costs of service shall be advanced by the United States, and the Clerk shall provide all necessary materials and copies to the United States Marshals Service.

In addition, pursuant to Federal Rule of Civil Procedure 4(i), the Clerk shall (1) personally deliver to or send by registered or certified mail addressed to the civil-process clerk at the office of the United States Attorney for the Southern District of Illinois a copy of the summons, the Complaint, and this Memorandum and Order; and (2) send by registered or certified mail to the Attorney General of the United States at Washington, D.C., a copy of the summons, the Complaint, and this Memorandum and Order.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to the United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* shall be granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7**

---

for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or (2) doing any of the following: (A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or law to receive service of process."

**days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

    **IT IS SO ORDERED.**

    **DATED: April 26, 2018**

                                                      s/J. Phil Gilbert
                                                      United States District Judge